11 F.3d 1069
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Richard E. BACHTEL, Richard G. Milham, Prado Petroleum Co.,
Santa Fe International Corporation; Donald C. Winkler, Ross
O. Nelson, Para Los Ninos; Plaza de la Raza; University of
Southern California, and Santa Ana Valley Irrigation
Company, Plaintiffs-Appellants,
v.
David MURDOCH d/b/a Pacific American Oil Company, Plaintiff,
v.
The UNITED STATES, Defendant-Appellee.
 No. 93-5070.
 United States Court of Appeals, Federal Circuit.
 Oct. 6, 1993.
Rehearing Denied; Suggestion for Rehearing In Banc
Declined Dec. 16, 1993.
 
 Before NEWMAN, ARCHER, and MICHEL, Circuit Judges.
 DECISION
 MICHEL, Circuit Judge.
 
 
 1
 Bachtel et al. ("Appellants") appeal the November 23, 1992 decision of the United States Court of Federal Claims (CFC), No. 674-88 L, granting summary judgment and dismissing appellants' breach of contract and takings claims under two lease agreements, the Federal Lease and the Santa Ana River Development Company (SARDCO) Lease. Because there are no material issues of fact and because appellants have not established under the unambiguous terms of either lease that they have a protectable property right which has been taken as a result of government caused flooding, we affirm.
 
 DISCUSSION
 
 2
 Appellants are lessees of oil and gas rights in certain parcels of government land lying in the Prado Basin in California. The land covered by both leases is subject to flooding as a result of operation of the Prado Dam, which the United States built pursuant to the Flood Control Act of 1936 to protect metropolitan Orange County, California, from flooding.
 
 
 3
 Appellants filed suit in the CFC alleging that the government changed its policy in operating the Prado Dam, by also using the dam for water conservation and storage purposes, rather than only for flood control. Appellants argued that this change in use increased the time during which the land was submerged, thereby putting a greater servitude on it than contemplated by the parties when they entered into each lease agreement, thus breaching the lease agreements and effectuating a taking. The government filed a motion for summary judgment.
 
 
 4
 In granting summary judgment, the CFC concluded that the Federal Lease was unambiguous, thereby precluding the introduction of parol evidence as to the intent of the parties. The CFC concluded that the "subordination clause" of the Federal Lease explicitly gave the government the right to flood the land intermittently or permanently and that the "hold harmless" clause released the government from liability for damages resulting from flooding due to any government activity in connection with operation of the dam. With respect to the SARDCO lease, the CFC concluded that appellants did not raise a material factual issue regarding whether they had suffered greater flooding than that which would have been caused by the dam's anticipated operation, because appellants produced no specific evidence to contradict the government's evidentiary showing that appellants' wells were only submerged for sixteen percent of the time between August 1982 and July 1992.
 
 I. The Federal Lease
 
 5
 On appeal, appellants argue that the Federal lease is ambiguous, because the "very operation of oil and gas wells is contrary to long term retention of water," and because the lease specifically refers to recreational use which is "inconsistent with the retention of water for other than flood control purposes." Appellants also argue that no language in the Federal Lease indicates the dam will be used for water conservation, and that the lease provision concerning "flooding in connection with the operation of the Prado Flood Control Basin Project" (emphasis added) creates an ambiguity regarding the operation of the dam contemplated by the parties in signing of the lease. Therefore, appellants argue that the CFC's reliance on Bistline v. United States, 640 F.2d 1270 (Ct.Cl.1981), to ban the introduction of parol evidence is misplaced because a material fact issue exists as to whether the Prado Dam is being operated within the limits initially authorized by Congress.
 
 
 6
 The plain language subordinates all of appellants' rights under the lease to the government's right "to flood and submerge the lands, permanently or intermittently in connection with the operation and maintenance of the Prado Flood Control Basin Project." (emphasis added). In addition, the "hold harmless" clause exempts the United States from any liability "arising from or incident to the flooding of the said premises by the Government or flooding from any other cause, or arising from or incident to any other Governmental activities. " (emphasis added). We find nothing ambiguous in this language.
 
 
 7
 That the lease grants appellants certain oil and gas rights and mentions concurrent recreational use of the land does not make either clause ambiguous. Although no language in the Federal Lease indicates that the dam will be used for water conservation purposes, the lease contains no language prohibiting such a use. The subordination clause, giving the government the right to flood the land permanently or intermittently, is unrestricted as to purpose. Considering these clauses together, we hold that the Federal Lease unambiguously releases the government from any liability for flooding of the land by operation of the dam for any purpose.
 
 
 8
 Thus, there was no justification to resort to parol evidence of the parties' intentions. Beta Sys., Inc. v. United States, 838 F.2d 1179, 1183 (Fed.Cir.1988). Accordingly, the CFC's reliance on Bistline, which is binding precedent for us, is not misplaced. In Bistline, the government had a flowage easement with an accompanying release which stated:
 
 
 9
 The Grantors ... do hereby release the United States of America, and its assigns, from all claims for damages that have accrued or may hereafter accrue to any or all of the above described lands by reason of the overflow of water occasioned by the construction and operations of the said [project]....
 
 
 10
 640 F.2d at 1273. The then Court of Claims concluded that this comprehensive release was "complete and unambiguous" and, therefore, the parol evidence rule barred consideration of the parties' understanding of the agreement. The release here is equally complete and unambiguous. Therefore, the CFC correctly barred evidence of the parties' intent.
 
 II. The SARDCO Lease
 
 11
 Appellants also argue that under the SARDCO lease they raised a material fact issue precluding summary judgment: whether by changing its operational policy with respect to the Prado Dam, the government placed a greater servitude upon the SARDCO property than allowed by the 1944 flowage easement. The language of the 1944 condemnation action grants the government "a perpetual easement to flood and inundate any or all of [the SARDCO land] intermittently as may be required from time to time, incidental to the successful operation and maintenance of the Prado Flood Control Basin for controlling storm water run-off...." Appellants argue that the easement is restricted to controlling storm water run-off. Therefore, the alleged change in use of the dam to water conservation purposes exceeds the scope of the easement and effectuates a taking of appellants' rights under the lease.
 
 
 12
 The SARDCO lease, however, is subject not only to the 1944 government flowage easement, but also to a 1967 condemnation action by the Orange County Water District (OCWD). Although the 1944 flowage easement is arguably limited in purpose to operation of the dam for control of storm water run-off, the 1967 condemnation action was specifically made "to augment the water supplies of the [OCWD] and the conservation of water within and outside said District." Even if appellants could show that the government began using the dam for water conservation purposes, such use was clearly permissible under the 1967 condemnation action. Therefore, any argument that appellants may have had that the government exceeded the scope of the 1944 easement was mooted by the 1967 condemnation action. Moreover, these conditions prevailed when appellants acquired their rights under the SARDCO lease in 1982. Accordingly, whether or not the government used the dam for water conservation purposes is irrelevant and presents no material fact issue.
 
 
 13
 Appellants' argument that they retained surface rights in the SARDCO land also fails. The 1967 condemnation action transferred title to the land in fee simple to the OCWD, subject to the 1944 government flowage easement and excepting the rights under the lease to "all oil, gas, petroleum and other hydrocarbon substances in or under or which may be produced from said land which underlies a plane parallel and 500 feet below the present surface of said land and the right of prospecting for, the exploration, development, production, extraction, and taking of said oil, gas, petroleum and other hydrocarbon substances from said land." (emphasis added). The unambiguous language of the condemnation order transferred to Orange County all title to the surface rights. Therefore, even though the 1967 condemnation order further specified a right of surface entry and use of said land for exploration and production in connection with the mineral rights and for access to the drilling platforms, this provision did not convey actual ownership of a "surface right," which would conflict with OCWD's and the government's right to flood the land at will for water conservation purposes.
 
 
 14
 Because appellants have failed to show that they retained surface rights in the SARDCO property or that there was a material fact issue, we conclude that the government is entitled to summary judgment as a matter of law.
 
 III.
 
 15
 We have considered appellants other arguments and find them unpersuasive. In view of our holding, we need not reach the government's statute of limitations argument.